NEWLYN COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MEADOW FORK COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9753, 9770. Promulgated December 23, 1927.

836

*W. L. Harrison*, *C. P. A.*, and *J. B. Grice*, *C. P. A.*, for the petitioners.

*C. H. Curl*, *Esq.*, for the respondent.

OPINION.

SMITH: The deficiencies determined by the Commissioner are predicated upon the basis of the affiliation of the petitioners for the year 1917. The petitioners in their appeals and by amendments at the trial assigned the following errors, which are in issue in these proceedings:

1. Respondent allowed petitioners, as a deduction under section 203(a) of the Revenue Act of 1917, 7 per cent of the invested capital as a prewar credit in computing the excess profits deduction for 1917, instead of a 9 per cent deduction.

2. Respondent disallowed an item of, $2,859.25, representing the cost to the Newlyn Coal Co., less scrap value, of an electric locomotive purchased and paid for in 1917, which was charged to expense in that year.

3. Respondent failed to allow, in the computation of petitioner's taxable income for the year 1917, the fair market value as of March 1, 1913, of the coal mining leasehold, including developments and improvements, of Newlyn Coal Co.

4. Respondent failed to allow, in the computation of petitioner's taxable income for the year 1917, the fair market value as of March 1, 1913, of the coal mining leasehold, including developments and improvements, of Meadow Fork Coal Co.

5. Respondent failed to allow depreciation, on the fair market value at March 1, 1913, of the developments and improvements on the leasehold of the Newlyn Coal Co. in computing its 1917 income.

6. Respondent failed to allow amortization, on the fair market value as of March 1, 1913, of the coal mining rights of the lessee, Newlyn Coal Co., in computing its 1917 income.

7. Respondent failed to allow depreciation, on the fair market value at March 1, 1913, of the developments and improvements on the leasehold of the Meadow Fork Coal Co. in computing its 1917 income.

8. Respondent failed to allow amortization, on the fair market value as of March 1, 1913, of the coal mining rights of the lessee, Meadow Fork Coal Co., in computing its 1917 income.

9. Respondent failed to include in the invested capital of the consolidation for the year 1917 the earned surplus of each corporation at January 1, 1917.

10. Respondent prorated the invested capital of the Meadow Fork Coal Co. from January 1, 1917, to July 16, 1917, instead of including the invested capital for the whole year 1917.

11. Respondent computed profit from the sale of the Meadow Fork Coal Co. leasehold on July 16, 1917 on a fictitious cost or value, instead of on the fair market vale as of March 1, 1913, less depreciation and amortization to said date of the sale.

12. Respondent added to the *cost of the leasehold* sold by the Meadow Fork Coal Co. an item of $23,240.94, representing royalities paid lessor in 1917, instead of deducting this expenditure as an *operating cost* for 1917.

13. Respondent by a mathematical error in his computation overstated, by an amount of $7,292.95, the profit in the year 1917 from the sale of the Meadow Fork Coal Co. leasehold.

14. Respondent failed, after committing the foregoing errors, to give petitioners the benefit of special relief, under section 210 of the Revenue Act of 1917, in the computation of their profits-tax liability for the year 1917.

■ We are satisfied from the evidence that the petitioners had no earnings or at least less than 7 per cent upon their invested capital during the prewar period. The denial by the respondent of a higher prewar credit than 7 per cent on invested capital is sustained.

■ The Newlyn Coal Co. claims to have sustained a loss in 1917 by reason of the improper functioning of an electric locomotive and that the amount of the deductible loss is the cost thereof less $100 for scrap value. We are of the opinion that the evidence does not prove a loss of this locomotive in the year 1917.

■ inclusive. The principal contentions of the petitioners are that the respondent has failed to allow the fair market value on March 1, 1913, of the petitioners' leaseholds, including developments and improvements, for the purpose of computing an exhaustion allowance for 1917 and also for the purpose of computing profit upon the sale of the Meadow Fork Coal Co. leasehold on July 16, 1917. The petitioners have no books of account from which the depreciated cost of development and improvements can be determined. They have submitted the testimony of numerous witnesses and mining men as to the fair market value of such improvements and also of the value of the coal-mining rights. Upon the basis of such evidence the Newlyn Coal Co. claims that the value of its developments and improvements at March 1, 1913, was $100,000 and the value of its coal-mining rights was $42,696, and the Meadow Fork Coal Co. claims that the value of its mine developments and improvements on March 1, 1913, was $100,000 and the value of the coal-mining rights, $76,858.80. An accountant, after a painstaking investigation of such records as the petitioners had in 1924, determined that the depreciated cost of the leasehold improvements, including tools and livestock of the Newlyn Coal Co., was on January 1, 1917, $73,085.82, and of the Meadow Fork Coal Co. on the same date was $58,959.17. We are of the opinion that these figures constitute as nearly as can be determined the depreciated cost of the leasehold improvements at January 1, 1917. We are also of the opinion that on March 1, 1913, the value of such leasehold improve-

ments was not in excess of these figures, exhaustion and depreciation being taken into consideration in reaching such March 1, 1913, values.

The petitioners' claim for a value for their leases on March 1, 1913, in excess of the depreciated cost of the improvements is not sustained by the evidence. The value of $42,696 for the coal-mining rights of the Newlyn Coal Co. on March 1, 1913, was determined by an engineer, who was a witness for the petitioner, upon the assumption that the lessee had a right to mine coal from the lease for a period of 25 years from March 1, 1913, whereas it had that right for a period of only 16 years. The determinations of the values for these mining rights appear also to have been predicated upon the supposition that the per-ton royalty was only 10 cents and that this was somewhat less than the royalties paid by other lessees in the same district. The record shows, however, that it was not practicable or possible with the equipment of the mines to produce the minimum amount of coal which was necessary to meet the minimum royalties at the rate of 10 cents per ton. An engineer testifying for the petitioners stated that these small mines would not warrant the investment of a large amount of money in equipment to produce a large tonnage at these mines. The royalties actually paid during all the years up to 1917 were the equivalent of approximately 20 cents per ton and apparently for some years considerably in excess of that amount. The person who offered $200,000 for the leaseholds in 1906, or 1907, did not undertake to testify as to the value of the leaseholds in 1913. The offer made in 1906 was apparently for the purpose of controlling the market price of coal in the Loup District of West Virginia. The evidence would indicate that at that time there was a prospect that the mines could and would be operated successfully. The experience of the petitioners, however, up to 1913 was that the mines were operated at only a small profit, if any. In the light of all of the evidence, we are of the opinion that the petitioners are not entitled to deduct from the gross income of 1917 any amount upon an assumed value of the mining rights at March 1, 1913. The only allowances for exhaustion and depreciation to be spread over the life of the leases are those based upon the depreciated cost of the improvements and developments on January 1, 1917.

■■ ■ The ninth issue is as to the inclusion of the surplus in the invested capital on January 1, 1917, of the two companies, namely, the Newlyn Coal Co. and the Meadow Fork Coal Co., of $45,241.49 and $29,247, respectively, making a total surplus in the consolidation of $74,788.49. The tenth issue is the right of the Meadow Fork Coal Co. and the consolidation to have the benefit of the invested capital of the Meadow Fork Coal Co. for the entire year 1917, instead of prorating such invested capital from the sale of the

leasehold and improvements on July 16, 1917, as has been done by the Commissioner.

The petitioners are sustained upon both of these points.

■■■ The Meadow Fork Coal Co. sold its lease and improvements thereon in 1917 for $90,000. The depreciated cost on January 1, 1917, of the improvements, including tools and livestock, was $58,959.17. The company also owed $23,240.94 back royalties and $528.51 for timber cut off the land in 1906, contrary to the terms of the lease. The sum of these three amounts is $82,728.62. Petitioner received $90,000 from the purchaser. The difference represents the profit upon the sale of the mining property. The petitioners make much of the fact that in the determination of the deficiency the respondent has added to the cost of the leasehold sold $23,240.94, representing royalties paid by the petitioner in 1917, instead of deducting this expenditure for an operating cost in 1917. This proposition is as broad as it is long, however, upon the basis of the facts found. The result is the same whether it be added to the cost of the leasehold or treated as an operating expense for 1917.

■ This issue relating to a mathematical error by the respondent in the computation of the profit from the sale of the Meadow Fork Coal Co. leasehold appears to be well founded. It will be settled under Rule 50.

■ The petitioners contend that the respondent has failed to give them the benefit of special relief under section 210 of the Revenue Act of 1917 in the computation of their profits-tax liability for 1917. We are of the opinion that the evidence does not establish that the invested capital can not be satisfactorily determined and a determination of the tax under section 210 is not warranted.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by Trussell, Love, and Littleton.